Murphy, J.
Plaintiff John F. Baer, Jr., the Trustee of the Kitchen Table Realty Trust (“Baer”), brings this action against Defendant Western World Insurance Company (“Western World”) seeking a declaratory judgment, damages to compensate for an alleged breach of contract and G.L.c. 93A violations, and treble damages in accordance with G.L.c. 93A, §11. Specifically, Baer requests a declaration that Western World was obliged to defend Baer in an underlying action, based upon alleged bodily injuries from lead poisoning occurring while one Luis Angel Aldea (“Aldea”) resided in a property owned by Baer, brought in 1996 on behalf of Aldea by his mother and next friend, Mary Ann Matos, in the Worcester Housing Court (the “Aldea Action”).
*722 The action appears before this Court on the Defendant’s Motion, and Plaintiffs Cross-Motion, for Summary Judgment pursuant to Mass.R.Civ.P. 56. Western World argues that it was not obligated to provide Baer with a defense in the Aldea Action because Aldea’s claims were outside of Western World’s coverage of Baer. Baer contends obversely that Aldea’s claims fell within the scope of Western World’s coverage.
For the reasons set forth below, the Plaintiffs Motion for Summary Judgment is hereby ALLOWED in part, and the Defendant’s Cross-Motion for Summary Judgment is hereby ALLOWED in part.
Both Motion and Cross-Motion are otherwise DENIED.
STATEMENT OF RELEVANT FACTS
The Court takes the following facts as established from the summary judgment record. Western World is an insurance company organized under New Hampshire law and based at 400 Parson’s Pond Drive, Franklin Lakes, New Jersey. Baer is a residential landlord with a residence at 154 Pleasant Street, Framingham, Massachusetts.
Between 1987 and 1990, Baer had “surplus lines” insurance with Western World covering certain premises that he owns at 12 Tirrell Street in Worcester, Massachusetts (the “Property”).[2] The insurance policies at issue (the “Policies”) contain three separate coverages, each with separate premiums. The first covers property damage, and is not at issue in this action. The second covers certain claims brought against the insured for bodily injury (the “Bodily Injury Liability Coverage”). The third coverage at issue extends to claims against the insured for injury arising out of “wrongful entry or eviction, or other invasion of the right of private occupancy” (the “Personal Injury Liability Coverage”).
With respect to the Bodily Injury Liability Coverage, Western World attached an endorsement , numbered WW 165 (the “Exclusionary Endorsement”) to each of the Policies. The Exclusionary Endorsement states that “[i]t is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage does not apply to Bodily Injury arising out of Lead Paint Poisoning.”
It is undisputed that Aldea resided at the Property with his mother during the period to which the Policies applied. Aldea’s complaint contained two counts, alleging that 1) Baer was strictly liable under the lead poisoning statute, G.L.c. Ill, §§190 etseq., and 2) the injury to Aldea constituted an interference with quiet enjoyment.
In February 1997, Western World refused to defend Baer, relying on the Exclusionary Endorsement.
In June 1998, Baer settled the Aldea Action for $70,000, and now seeks indemnification of the settlement amount plus attorneys fees.
DISCUSSION
I. Summary Judgment Standard
The Supreme Judicial Court has recognized summary judgment as ”... an excellent device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.” Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); see also Cassesso v. Comm’r. of Correction, 390 Mass. 419, 422 (1984). Summary judgment should be granted “forthwith” where there are no material facts in dispute and the moving party is entitled to a judgment as a matter of law. Mass.R.Civ.P. 56(c); see Dawes, 550 Mass. at 553.
Further, “(w)hen a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him ...” Madsen v. Erwin, 395 Mass. 715, 719 (1985), in part quoting Mass.R.Civ.P. 56(e). “A party moving for summary judgment in a case which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates .. . that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). In other words, where the party moving for summary judgment does not have the burden of proof at trial, the requirements of Mass.R.Civ.P. 56 may be met either by submitting affirmative evidence that negates an essential element of the opponent’s case or... by demonstrating that proof of that element is unlikely to be forthcoming at trial." Flesner v. Technical Communications Corp., 410 Mass. 805 (1991).
In the case at bar, for reasons to be explicated, Baer has established as a matter of law that Western World had a duty to provide him a defense to the Aldea Action, but will be unable to establish that Western World violated G.L.c. 93A.
II. Western World’s Duty to Defend
Baer claims that he was entitled to a defense by Western World against the Aldea Action under both the Bodily Injury Liability Coverage and the Personal Injury Liability Coverage. Under Massachusetts law, there is a dual test for determining if an insurer has a duty to defend an insured. Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983). The first aspect is an analysis of whether “the allegations of the complaint are ‘reasonably susceptible’ of an interpretation that they state or-adumbrate a claim covered by the policy terms.” Id., quoting Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431 (1965). “The process is one of envisaging what kinds of losses may be proved as lying within the range of the allega *723 tions of the complaint, and then determining whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.” Sterilite Corp., 17 Mass.App.Ct. at 318. “There is no requirement that the complaint specifically and unequivocally make out a claim within the coverage.” Id. at 319.
Under the second part of the test, the insurer can still avoid defending the insured party “when it demonstrates with conclusive effect on the third party that as a matter of fact (as distinguished from the appearances of the complaint and policy) the third party cannot establish a claim within the insurance.” Id. at 323. The second part of the duty to defend thus merges with the test for indemnification: the insurer can escape the duty to defend only by proving that it will have no legal duty to indemnify any of the claims of the insured party that may result from the action. In essence, Western World must prove that the claims at issue in the Aldea Action were not claims coverable by the policy as a matter of law.
A. The Bodily Injury Liability Coverage
Western World contends that the injury alleged by Aldea falls outside of the Bodily Injury Liability Coverage and within the Exclusionary Endorsement. In support thereof, it points to the language in the Exclusionary Endorsement denying coverage for bodily injury arising out of lead paint poisoning. Because Aldea's complaint against Baer alleges lead paint poisoning, Western World argues, it owed no duty to defend Baer.
True enough, the complaint does so allege. Unfortunately for Western World’s position, the complaint Eilso alleges additional potential sources of lead poisoning. In fact, Aldea’s complaint against Baer alleges explicitly that “the rented premises had a level of lead in the paint, plaster, and/or other accessible material on the interior and exterior surfaces that was hazardous to the health and well-being of its inhabitants” [emphasis added). See Aldea v. Miller, Civ. Act. No. 96CV160 (Worcester), Amended Complaint. Further, the complaint explicitly states that all references made in it to “ ‘lead paint’ are to be considered as including paint, plaster, putty and other materials containing lead in the subject apartment, common areas, and interior and exterior surfaces of the building referred to.” See id. The Court finds these allegations are in no way limited to “paint” as the toxic source of the poisoning, and thereby are “reasonably susceptible” of an interpretation that they state or adumbrate a claim covered by Bodily Injury Liability Coverage. Therefore, Western World cannot demonstrate Aldea could not establish a claim within the insurance.
B. The Personal Injury Liability Coverage
Western World also argues that the injuries alleged by Aldea fall outside of the Personal Injury Liability Coverage. Under the terms of the Personal Injury Liability Coverage, Western World pledged to “pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury sustained by any person . . . and arising out of . . . wrongful entry or eviction, or other invasion of the right of private occupancy.” According to Western World, Aldea’s claims relate to bodily injuries and do not trigger the Personal Injury Liability Coverage, which extends only to cover torts enumerated in the Policies’ definition section. Because Aldea did not allege such a specifically enumerated tort, Western World contends, it owed no duty to defend Baer.
Aldea’s complaint does not in fact allege any enumerated tort, nor does it allege any injury arising out of a wrongful entry or eviction. The complaint does, however, allege a breach of Aldea’s right of quiet enjoyment.
Although Western World offers case law from other jurisdictions to support its position that the breach of an occupant’s right of quiet enjoyment does not constitute an invasion of the right of private occupancy, under these circumstances this Court disagrees. Massachusetts courts have yet to define the phrase “right of private occupancy." The phrase is legally ambiguous, and as the Policies’ draftsmen were agents of Western World, the Court construes it in favor of the insured. See Vappi & Co., 348 Mass. at 431. A reasonable person may easily construe the term “private occupancy” to equate with quiet enjoyment. Both phrases evoke the notion of possession or occupation of a premises free from invasion or interference. Lead poisoning constitutes one very powerfully invasive interference with private, or quiet, possession. See Al-Ziab v. Mourgis, 424 Mass. 847 (1997).
III. The Willful Violation of a Penal Statute Exclusion
Additionally, Western World asserts that Aldea’s claims fall within the Personal Injury Liability Coverage’s specific exclusion for willful violations of a penal statute. Under the terms of the Personal Injury Liability Coverage, the insurance does not apply “to personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.” However, the record before the Court does not evidence, and Aldea did not allege, any willful violation of the lead poisoning statute, G.L.c. Ill, §§190 et seq., by Baer, or any such violation committed with Baer’s knowledge or consent. Therefore, the willful violation of a penal statute exclusion to the Personal Injury Liability Coverage does not apply, and Western World's claim in such regard fails as a matter of law.
IV. The G.L.c. 93A Claim
Lastly, Western World denies that it violated G.L.c. 93A when it refused to assume Baer’s defense in the Aldea Action. The Court agrees. “A good faith denial of an insurance claim, based upon a reasonable inter *724 pretation of the policy, is unlikely to give rise to a violation of G.L.c. 93A.” Gulezian v. Lincoln Ins. Co., 399 Mass. 606, 613 (1987). In the instant action, the record reveals no evidence that Western World’s refusal to defend Baer was made in bad faith or was unreasonable. See id.; Lumbermen's Mut. Casualty Co. v. Offices Unlimited., Inc., 419 Mass. 462, 468 (1995). Western World’s interpretations of the Policies, although incorrect as a matter of law, were clearly reasonable and predicated upon sound argument.
ORDER
For the above reasons, as aforestated, it is ordered that the Defendant’s Motion for Summary Judgment is hereby ALLOWED in part, and the Plaintiffs Cross-Motion for Summary Judgment is ALLOWED in part, all as stated herein, and otherwise DENIED.

Western World Policy GLA271147 was effective from May 21, 1987, to May 21, 1988, and was renewed for an additional year until May 21, 1989. Western World Policy GLA307878 was effective from May 21, 1989, to May 21, 1990.