Kimberly Ruth DAWSON, Mindy Dawson, Michael Paul Dawson, and Michelle Dawson, By and Through their guardian-ad-litem, Susan T. Dawson, Plaintiff and Appellant,

v.

Floyd S. DAWSON, Ruth E. Dawson and Vanguard Insurance Company, a Texas corporation, Defendants and Appellees.

No. 920447–CA.

Court of Appeals of Utah.

Nov. 13, 1992.

Robert B. Sykes (argued) and Eugene C. Miller, Jr., Sykes & Vilos, P.C., Salt Lake City, for plaintiff and appellant.

D. Gary Christian and Shawn McGarry (argued), Kipp & Christian, P.C., Salt Lake City, for defendants and appellees.

Before BILLINGS, JACKSON and RUSSON, JJ.

## OPINION

JACKSON, Judge:

This is an appeal from the trial court's grant of summary judgment in favor of the defendants. The trial court, in finding no cause of action, held the accident in question was not covered under the defendants' homeowners policy. The Supreme Court had original jurisdiction over the appeal under Utah Code Ann. § 78–2–2(3)(j) (Supp. 1992). The case is before us by way of transfer pursuant to Utah Code Ann. § 78–2–2(4) (Supp.1992). We affirm.

## FACTS

On July 1, 1988, the grandchildren of defendants Floyd and Ruth Dawson were injured while operating a four wheel all-terrain vehicle (ATV) on property owned by their grandparents. The property in question is a 2.79 acre parcel in South Fork Canyon, Utah, located about 36 miles from Ogden. The grandparents stayed on the property two days and one or two nights a week during the months of June, July, August, and September. At the time of the accident, the following items of personal property and improvements were located on the property:

1. A fifth wheel trailer used from May to October of each year;

2. A concrete pad and wooden stairs used to facilitate access to the trailer;

3. A sewer tank hooked up to the trailer;

4. A second "sleeper" trailer used as a separate bedroom;

5. A metal storage shed anchored with concrete footings;

6. An automobile bridge spanning a creek;

7. A pedestrian bridge spanning a creek;

8. An outhouse;

9. A pipe running from a natural spring;

10. Various swings;

11. A screen tent;

12. A wooden picnic table;

13. A fire pit;

14. Stored scrap metal; and

15. A gravel access road.

At the time of the accident, Floyd and Ruth Dawson's primary residence was covered by a Vanguard Insurance Company homeowners policy. The homeowners policy covered "claims or suits brought against the insured for damages because of bodily injury or property damage caused by an occurrence to which coverage applies." The policy specifically excluded coverage for the use of motor vehicles. The policy contained an exception to that exclusion, however, which stated the exclusion did not apply to "motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and ... owned by an insured and on an insured location." The parties do not dispute that Floyd and Ruth Dawson are insureds and own the all-terrain vehicle. The dispute in this case arises from the policy definition of "insured location." The policy defines "insured location" as "vacant land, other than farm land owned by or rented to an insured." The land in question is owned by the grandparents and it is not farm land.

The sole issue in this case is whether the land in question is "vacant." If it is, the exception to the exclusion applies, and the grandparents' homeowners policy covers the ATV accident on the 2.79 acre parcel. We agree with the trial court that Floyd and Ruth Dawson's 2.79 acre parcel is not "vacant land" and that their homeowners policy does not cover the ATV accident on that property.

## STANDARD OF REVIEW

■ In reviewing a summary judgment, the reviewing court gives no deference to the trial court's conclusions of law. *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 636 (Utah 1989). Those conclusions are reviewed for correctness. *Id.*

## ANALYSIS

■ The insurance policy does not define the term "vacant land." When construing the meaning of an insurance policy term, ordinary contract rules should be followed. *Bergera v. Ideal Nat'l Life Ins. Co.*, 524 P.2d 599, 600 (Utah 1974). It should also be kept in mind that "the purpose of insurance is to insure," and clauses excluding activities from coverage are to be strictly construed against the insurer. *LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988).

Parties to an insurance policy, however, "are free to define the exact scope of the policy's coverage and may specify the losses or encumbrances the policy is intended to encompass." *Valley Bank & Trust Co. v. U.S. Life Title Ins. Co.*, 776 P.2d 933, 936 (Utah App.1989) (quoting *Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103, 1107 (8th Cir.1980)). The insurer may avoid assuming the risk of loss associated with a particular activity or place by using "language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." *Village Inn Apartments v. State Farm Fire & Casualty Co.*, 790 P.2d 581, 583 (Utah App.1990) (quoting *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800, 180 Cal.Rptr. 628, 640 P.2d 764, 769 (1982)). If the policy terms excluding coverage are unambiguous, then "we interpret those terms in accordance with their plain and ordinary meaning." *Valley Bank*, 776 P.2d at 936.

The plaintiff argues the term "vacant land" is ambiguous by definition because it is capable of being construed in different ways. A policy term is not ambiguous, however, "merely because one party assigns a different meaning to it in accordance with his or her own interests." *Village Inn*, 790 P.2d at 583. The Utah Supreme Court set forth the following test for determining whether a contract term is ambiguous:

> Would the meaning [of the language in the insurance contract] be plain to a person of ordinary intelligence and understanding, viewing the matter fairly and reasonably, in accordance with the usual and natural meaning of the words, and in the light of existing circumstance, including the purpose of the policy[?]

*LDS Hosp.*, 765 P.2d at 858–59 (quoting *Auto. Lease Co. v. Central Mut. Ins. Co.*, 7 Utah 2d 336, 339, 325 P.2d 264, 266 (1958) (footnote omitted)).

The main purpose of Floyd and Ruth Dawson's homeowners policy is to insure their primary residence. The policy also provides limited coverage for activities away from the primary residence. We find that the term "vacant land," viewed in light of the purpose of the policy and in accordance with its "usual and natural" meaning, would be plain to a person of "ordinary intelligence." The term is unambiguous and should be given its plain and ordinary meaning.

The dictionary defines the word "vacant" as "containing nothing; empty." American Heritage Dictionary 1334 (2nd college ed. 1985). Other commentators, describing "vacant" in the context of land, have referred to land "in the natural state." 11 George J. Couch, *Couch on Insurance* § 44:307 at 478 (2d ed. 1982) (footnote omitted). The land in question was not "vacant land." It was not empty. It had an outhouse, a shed and several other permanent structures that do not appear "naturally" on the land.

The plaintiff also argues that even though a portion of the owned land was not vacant, the portion of the land where the accident occurred was vacant. The policy, however, covers "vacant land ... owned by the insured," not vacant portions of owned land. The land in question in this case is the grandparents' entire 2.79 acre parcel, not a portion of it.

## CONCLUSION

The 2.79 acre parcel was not vacant at the time of the ATV accident and was therefore not covered by Floyd and Ruth Dawson's homeowners policy. The trial court's summary judgment conclusion that plaintiff had no cause of action was correct.

Affirmed.

BILLINGS and RUSSON, JJ., concur.