NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-184

KARL BARBACKI, personal representative,[1] & another[2]

vs.

ABIGAIL WILLIAMS & another.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This appeal concerns a dispute over legal representation and collection of related attorney's fees.  The plaintiffs, who are personal representatives of the estate of Nellie Barbacki, appeal from three summary judgment orders granted in favor of the defendants, Abigail Williams and Abigail Williams & Associates, LLC, which (1) dismissed the plaintiffs' claims of unfair or deceptive practices under G. L. c. 93A, and for equitable determination of legal fees; (2) denied the plaintiffs' motion for summary judgment on the defendants' counterclaims for breach of contract and breach of the covenant of good faith and fair dealing; and (3) allowed the defendants'

_____

[1] Of the estate of Nellie Barbacki.
[2] Rosalind Brezinski, personal representative of the estate of Nellie Barbacki.
[3] Abigail Williams & Associates, LLC.

motion for summary judgment on their counterclaims and entered judgment in the defendants' favor.  We affirm.

Background.  1.  Medical malpractice case.  In 2014, the plaintiffs, Karl Barbacki and Rosalind Brezinski, contacted defendant Abigail Williams (Williams) to inquire about bringing a medical malpractice claim on behalf of their mother, Nellie Barbacki.[4]  Nellie had suffered a severe stroke after being discharged by her primary care physician despite showing concerning symptoms.  Karl, as power of attorney for Nellie, hired Williams, and her then-law firm, Abigail Williams & Associates, P.C. (AWA PC), and the parties signed a contingency fee agreement regarding the terms of the representation that would be provided, including, among other things, the payment of attorney's fees based on a percentage of the gross amount recovered.  Williams then brought a lawsuit on behalf of Nellie against the doctor and began negotiating with the doctor's attorney about a settlement agreement.  The case ultimately settled for $250,000, but Karl refused to pay Williams the legal fee.

---

[4] Nellie Barbacki passed away while her medical malpractice suit was pending and the complaint was amended to substitute Karl Barbacki and Rosalind Brezinski, personal representatives of the estate of Nellie Barbacki, as plaintiffs.  To avoid confusion, we refer to members of the Barbacki family by their first names from this point forward.

2

On April 15, 2016, Abigail Williams & Associates, LLC (AWA LLC)[5] filed a notice of attorney's lien for legal fees in the amount of $90,000, plus $644.45 for out-of-court expenses, though Williams signed the notice as a representative of AWA PC. A check was issued to the order of plaintiffs, plaintiffs' attorney, and "Abigail Williams and Associates, L.L.C." on February 22, 2017.

2. Legal malpractice case. On May 5, 2016, Karl, as Nellie's power of attorney, filed a legal malpractice claim in the Superior Court against Williams and AWA LLC[6] claiming, among other things[7], that Williams settled the case without authorization, that the settlement amount was too low, and that Williams settled in order to avoid proceeding before the medical tribunal when she had not obtained an expert opinion on the case.

---

[5] On April 17, 2015, during her representation of Nellie, Williams created AWA LLC.

[6] Erin Atwater, an associate attorney at AWA LLC, was also named as a defendant, but the claims against her were dismissed on summary judgment.

[7] Karl also set out claims of breach of fiduciary duty, fraudulent or intentional misrepresentation, negligent misrepresentation, breach of contract as to the firm, and vicarious liability/respondent superior as to the individual defendants.

3

Nellie died on October 7, 2016. Karl and Rosalind Brezinski were named as personal representatives of Nellie's estate.

After a jury trial in 2019, the legal malpractice case was resolved in favor of Williams and AWA LLC on all counts. The plaintiffs appealed, and a panel of this court dismissed the appeal as untimely but noted it would have affirmed the judgment if it had reached the merits. Barbacki vs. Williams, Mass. App. Ct., No. 21-P-56, slip op. at 2 (May 2, 2022).

3. Chapter 93A claim and counterclaims. In 2018, before the jury trial, the plaintiffs sought to add claims for violation of G. L. c. 93A, and for equitable distribution of legal fees. However, a Superior Court judge denied the motion to amend, explaining the claim would "add additional delay and needless complexity to what is a simple straight forward matter" and that "[t]here is still time for the plaintiff[s] to bring a separate G. L. c. 93A [action] if [they] wish[]."

The plaintiffs then brought a new action against Williams and AWA LLC,[8] asserting claims under G. L. c. 93A, and seeking an equitable determination of legal fees. The defendants brought counterclaims seeking to obtain the attorney's fee under claims

_____

[8] AWA LLC associate Erin Atwater was also named as a defendant in this case. The claims against her were dismissed on summary judgment and are not at issue in this appeal.

4

of breach of contract and breach of the covenant of good faith and fair dealing.  Summary judgment was granted for the defendants on the plaintiffs' G. L. c. 93A, and equitable determination claims on June 30, 2020.  On August 13, 2020, a second Superior Court judge allowed the defendants' motion to attach funds held in an account by the plaintiffs' attorney in the amount of $30,000.  On November 18, 2020, the plaintiffs' motion for summary judgment on the defendants' counterclaims was denied.  Then, on October 25, 2021, the defendants' motion for summary judgment on their counterclaims was allowed.

Discussion.  A court may grant summary judgment where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  "In reviewing the . . . grant of a motion for summary judgment, we conduct a de novo examination of the evidence in the summary judgment record . . . and view the evidence in the light most favorable to the part[y] opposing summary judgment . . . drawing all reasonable inferences in [the nonmoving party's] favor" (citations and quotations omitted).  Bulwer v. Mount Auburn Hosp. 473 Mass. 672, 680 (2016).

1.  Timeliness of breach of contract counterclaim.  The plaintiffs first argue that the defendants' fee claim was time barred because it was not brought within one year of Nellie's

5

death on October 7, 2016.  The defendants are pursuing ownership of a legal fee following a defense verdict in the underlying legal malpractice case.  General Laws c. 190B, § 3-803 (a), states "[e]xcept as provided in this chapter, a personal representative shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within [one] year after the date of death of the deceased."  Section 3-803 (d), further states "[n]othing in this section affects or prevents . . . any proceeding to enforce any . . . lien upon property of the estate."  The defendants argue that the attorney's fee is a "lien" pursuant to G. L. c. 221, § 50, and therefore not subject to the one year time limit.  We agree.

General Laws c. 221, § 50, states that an attorney "shall have a lien for [her] reasonable fees and expenses upon [her] client's cause of action, counterclaim or claim, upon the judgment, decree or other order in [her] client's favor."  Once the medical malpractice case settled, the defendants were eligible for a lien on the amount owed to them per the contingency fee agreement.  See Northeastern Avionics, Inc. v. Westfield, 63 Mass. App. Ct. 509, 513 (2005) ("A lien [pursuant to G. L. c. 221, § 50,] may . . . attach to proceeds derived from a stipulation of dismissal filed pursuant to an agreement to settle a claim in return for the payment of money").

6

Moreover, G. L. c. 190B, § 3-803, does not apply to a lawsuit by an equitable owner to enforce their title. See Stoneham Five Cents Sav. Bank v. Johnson, 295 Mass. 390, 395 (1936). Here, the defendants did not sue to collect a debt. Rather, the defendants brought a claim to enforce title to their portion of the settlement proceeds. For all of these reasons, we conclude that the judge properly concluded that the defendants' breach of contract claim was not time barred.

2. Enforceability of contingency fee agreement. "Whether a contract is ambiguous is . . . a question of law." Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287 (2007). "A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one." Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). The plaintiffs claim that the contingency fee agreement is unenforceable because it did not comply with Mass. R. Prof. C. 1.5 (c), as amended, 480 Mass. 1315 (2018).[9] Rule 1.5 (c) (3), requires that a contingency fee agreement state in writing "the nature of the claim, controversy, and other matters

_____

[9] As an initial matter, we note that were we to conclude that Williams violated Mass. R. Prof. C. 1.5 (c), she would likely be subject to discipline. Mass. R. Prof. C. 8.5, as appearing in 454 Mass. 1301 (2009). However, the plaintiffs cite no legal authority, and we find none, to support the argument that a violation of rule 1.5 would render a contingency fee agreement unenforceable.

with reference to which the services are to be performed."  In the contingency fee agreement between AWA PC and Karl, as power of attorney for Nellie, the claim, controversy, and other matter is described simply as "July 2, 2013."  Though we acknowledge this description is sparse, there was clearly a meeting of the minds between the parties about the purpose of the contract and the claim for which Williams would be representing Nellie -- the medical malpractice action.  This is reflected in the actions Williams took beginning with, but not limited to, filing a complaint against the doctor.

It is not clear what event specifically transpired on July 2, 2013.  The interaction between Nellie and her doctor occurred on July 1, 2013, and Nellie suffered a stroke on July 3, 2013.  However, AWA LLC's preliminary settlement breakdown lists the date of injury as July 2, 2013.  Ambiguous terms can be clarified through a course of performance of a contract.  See Lawrence v. Cambridge, 422 Mass. 406, 411 (1996) ("in an ordinary contract, where matters are left open the court may imply terms either that are reasonable or that may be gathered from the subsequent course of performance").  The parties' course of performance here clearly showed they all understood that the scope of the representation was centered around Nellie's medical malpractice claim against her doctor.  Williams represented Nellie in the medical malpractice case, which

8

included filing suit on her behalf, collecting medical records from the family, and communicating with Karl about the settlement amount. Though Karl disputes the details of his conversation with Williams leading to her acceptance of the settlement, neither party disputes the purpose of those calls, nor does anyone dispute Williams's relationship with the plaintiffs.

We conclude the term defining the nature or controversy in the contingency fee agreement, taken together with the actions of the parties, demonstrates that there was a meeting of the minds, and the contingent fee agreement was not "susceptible of more than one meaning and reasonably intelligent persons would [not] differ as to which meaning is the proper one." Citation Ins. Co., 426 Mass. at 381. Accordingly, the contingency fee agreement is enforceable.

3. Party to the contingency fee agreement. The plaintiffs claim that the defendants cannot make a claim under the contingency fee agreement because Williams and AWA LLC were not parties to the agreement. While it is true that the contingency fee agreement only lists Karl, as power of attorney for Nellie, and AWA PC as parties, we conclude that this does not prevent the defendants from recovering Williams' earned fee.

The corporate form may be disregarded where "there is a confused intermingling of activity of two or more corporations

9

engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting" (emphasis omitted). Scott v. NG U.S. 1, Inc., 450 Mass. 760, 767 (2008), quoting My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968). "The right and the duty of courts to look beyond the corporate forms are exercised only for the defeat of fraud or wrong, or the remedying of injustice." Scott, supra, quoting Hanson v. Bradley, 298 Mass. 371, 381 (1937).

We see no reason why these same principles should not apply here. Abigail Williams is the sole registered agent, president, and director of AWA PC, and the sole resident agent and manager of AWA LLC. Indeed, the plaintiffs acknowledge in their complaint that "[Nellie] retained Abigail Williams, Esq., and Williams & Associates to represent her." Although Williams signed the contingency fee agreement under AWA PC, she incorporated the LLC during her representation of the plaintiffs. This is a distinction without a difference for purposes of enforcement of the contingency fee agreement. The settlement check was payable to the plaintiffs, the plaintiffs' attorneys, and "Abigail Williams and Associates, L.L.C." Notwithstanding the legal entities, Abigail Williams was the

10

plaintiffs' attorney in the medical malpractice case, and she is therefore entitled to collect her earned fee.

4.  Chapter 93A claims.  The judge who granted summary judgment in favor of the defendants on the plaintiffs' G. L. c. 93A claims explained that "[t]he claims in this case arise out of the same transaction or series of connected transactions that gave rise to the earlier litigation . . . specifically, defendants' representation of [Nellie] Barbacki in the medical malpractice case" (citation and quotation omitted).  The plaintiffs argue that because the legal malpractice case was on appeal when summary judgment was decided, the judgment was not final and that the doctrine of res judicata does not apply.  This argument is unavailing because "[i]n Massachusetts, as elsewhere, a trial court judgment is final for purposes of res judicata or issue preclusion regardless of the fact that it is on appeal."  Commonwealth v. Hernandez, 481 Mass. 582, 595 (2019).  The plaintiffs reference the judge's statement in denying their motion to amend that "[t]here is still time for the [plaintiffs] to bring a separate G. L. c. 93A [action] if [they] wish[]" to argue that their c. 93A claims are not barred by res judicata.  However, we read this as a comment on the applicable statute of limitations, rather than the substantive merit of such a claim.

11

Lastly, the plaintiffs argue that Kattar v. Demoulas, 433 Mass. 1 (2000), supports their argument that the judgment on the c. 93A claims should be vacated because the judge could have made findings of fact contrary to the facts the jury found in the legal malpractice case to support their decision. Demoulas dealt with a situation where a jury made a nonbinding advisory opinion on a c. 93A claim. 433 Mass. at 12. The judge then made findings of fact that were contrary to the jury's advisory opinion, which the Court held was proper. Id. However, this case is distinguishable from Demoulas.

In Demoulas, the common law claims and c. 93A claims were being decided in the same case; in that situation, it was proper for the judge to make his own findings. Here, the same transaction had already been adjudicated on a final basis, as a separate action entirely. Therefore, all elements of claim preclusion were met: "(1) the identity or privity of the parties to the present and prior actions; (2) identity of the cause of action; and (3) prior final judgment on the merits." Gloucester Marine Rys. Corp. v. Charles Parisi, Inc., 36 Mass. App. Ct. 386, 390 (1994). Accordingly, the judge properly

12

determined that the c. 93A claims were barred by the doctrine of res judicata.

Judgment affirmed.

By the Court (Blake, Hershfang & D'Angelo, JJ.[10]),

*Joseph F. Stanton*

Clerk

Entered:  March 8, 2023.

---

[10] The panelists are listed in order of seniority.